**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNIVERSITY SPINE CENTER, <br><br> Plaintiff, <br><br> v. <br><br> HIGHMARK, INC., <br><br> Defendant. | Civil Action No.: 2:17-cv-11403 <br><br> **OPINION** |

**CECCHI, District Judge.**

### I. INTRODUCTION

This matter comes before the Court on the motion of Defendant Highmark, Inc. ("Defendant") to dismiss Plaintiff University Spine Center's ("Plaintiff") complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). (ECF No. 4). The Court has given careful consideration to the submissions from each party. Pursuant to Fed. R. Civ. P. 78(b), no oral argument was heard. For the reasons that follow, Defendant's motion to dismiss is granted.

### II. BACKGROUND

On June 16, 2016, Plaintiff performed "a lumbar laminectomy at L4-L5, transforaminal lumbar interbody fusion at L4-L5, posterior spinal instrumentation at L4-L5, application of intravertebral biomechanical devices at L4-L5, and posterolateral fusion at L4-L5" on Arthur H., ("Patient"), who is insured by Defendant. (ECF No. 1 at 7-8). "Plaintiff obtained an assignment of benefits from Patient in order to bring this claim under the Employee Retirement Income Security Act of 1974 . . . ("ERISA")." (*Id.* at 8). "Plaintiff prepared Health Insurance Claim Forms . . . formally demanding reimbursement in the amount of $309,050.00 from Defendant[.]" (*Id.*). "Defendant, however, only allowed reimbursement totaling $4,713.16[.]" (*Id.*). "Plaintiff engaged in the applicable administrative appeals process maintained by Defendant . . . . [but] Defendant failed to remit additional payment in response to Plaintiffs appeal[.]" (*Id.* at 8-9).

On November 7, 2017, Plaintiff filed a complaint against Defendant in the Superior Court of New Jersey Law Division: Passaic County, alleging: (1) breach of contract;[1] (2) failure to make all payments pursuant to a member's plan under ERISA, 29 U.S.C. § 1132(a)(1)(B); and (3) breach of fiduciary duty under ERISA, 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1), and 29 U.S.C. § 1105(a). (*Id.* at 9-13). Plaintiff purports that it has been underpaid in the amount of $304,918.09, which allegedly "[t]ak[es] into account any known deductions, copayments, and coinsurance[.]" (*Id.* at 9). On November 8, 2017, Defendant removed this matter to federal court, and now moves to dismiss Plaintiff's complaint. (ECF No. 4).

### III. LEGAL STANDARD

"Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court must dismiss a complaint if it lacks subject matter jurisdiction." *Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-13654, 2018 WL 1757027, at *1 (D.N.J. Apr. 12, 2018), *appeal filed*, No. 18-1921 (3d Cir. Apr. 25, 2018). "Ordinarily, Rule 12(b)(1) governs motions to dismiss for lack of standing, as standing is a jurisdictional matter." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015). "However, when statutory limitations to sue are non-jurisdictional, as is the case where a party claims derivative standing to sue under ERISA § 502(a), a motion to dismiss challenging such standing is 'properly filed under Rule 12(b)(6).'" *Univ. Spine Ctr.*, 2018 WL 1757027, at *1 (quoting *N. Jersey Brain*, 801 F.3d at 371 n.3). "Regardless, 'a motion for lack of statutory standing is effectively the same whether it comes under Rule 12(b)(1) or 12(b)(6).'" *Id.* (quoting *N. Jersey Brain*, 801 F.3d at 371 n.3).

---

[1] In Plaintiff's opposition brief, Plaintiff "agree[d] to voluntarily dismiss Count One of the . . . Complaint . . . as Defendant has confirmed this is an ERISA governed plan and, as such, both parties agree that the state breach of contract claim would be preempted." (ECF No. 6 at 1). Accordingly, count one of Plaintiff's complaint is dismissed.

2

"On a motion to dismiss for lack of standing, the plaintiff 'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* (quoting *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996)). "For the purpose of determining standing, [the Court] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the complaining party." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003).

## IV. DISCUSSION

"Under § 502(a) of ERISA, 'a participant or beneficiary' may bring a civil action to, *inter alia*, 'recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Univ. Spine Ctr.*, 2018 WL 1757027, at *2 (quoting 29 U.S.C. § 1132(a)). "Accordingly, standing to sue under ERISA is 'limited to participants and beneficiaries.'" *Id.* (quoting *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400-01 (3d Cir. 2004)). "As ERISA is silent on the issue of standing, Third Circuit precedent sets forth that a healthcare provider may bring a cause of action by acquiring derivative standing through an assignment of rights from the plan participant or beneficiary to the healthcare provider." *Id.* "Healthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary." *N. Jersey Brain*, 801 F.3d at 372.

Consequently, the question at issue in this matter is whether Patient executed a valid assignment of benefits consistent with the provisions of Patient's insurance policy. Defendant

contends that any assignment of benefits "is void as a matter of fact and law" because Patient's insurance policy "contains a clear, contractual anti-assignment provision that expressly prohibit[ed Patient] from assigning his rights and benefits to anyone."[2] (ECF No. 4-1 at 1). There appears to be no dispute that Patient's insurance policy's anti-assignment provision reads: "The right of a Member to receive payment is not assignable, except to the extent required by law, nor may benefits of this Contract be transferred either before or after Covered Services are rendered." (ECF No. 4-2 at 69).[3]

In response, Plaintiff argues that it has standing to pursue its claims against Defendant because, while the anti-assignment provision may have restricted Patient's *right* to assign his benefits, the anti-assignment provision did not affect Patient's *power* to assign his benefits. (ECF No. 6 at 6). In other words, Plaintiff avers that, although Patient may have breached a covenant not to assign his benefits under Patient's insurance policy, the appropriate remedy is not to void the assignment, but rather to award Defendant damages. (*Id.*). In order for Patient's assignment of benefits to be found invalid, Plaintiff asserts that Patient's insurance policy must have contained specific language "that nonconforming assignments (i) shall be 'void' or

---

[2] Defendant also maintains that Plaintiff's complaint should be dismissed because Plaintiff "is neither a participant nor beneficiary under the applicable health plan[.]" (ECF No. 4-1 at 4). Plaintiff "does not claim to be a participant or beneficiary, but rather asserts [its] right to bring suit under ERISA based upon the derivative standing [that] Patient's assignment of benefits . . . conferred to [it]," (ECF No. 6 at 1), as discussed herein.

[3] Plaintiff does not include a copy of Patient's insurance policy as an attachment to its complaint. On a motion to dismiss, however, the Court may consider the allegations in the complaint, any exhibits attached to the complaint, matters of public record, and undisputedly authentic documents upon which the plaintiff's complaint is based. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A document falls into the latter category even where the complaint does not cite or "explicitly rely[]" on it; "[r]ather, the essential requirement is that the plaintiff's claim be 'based on that document.'" *Brusco v. Harleysville Ins. Co.*, No. 14-914, 2014 WL 2916716, at *5 (D.N.J. June 26, 2014) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Here, Plaintiff's complaint explicitly relies on Patient's insurance policy. (ECF No. 1). As such, the Court will properly consider Patient's insurance policy with Defendant's motion to dismiss.

'invalid,' or (ii) that the assignee shall acquire no rights or the nonassigning party shall not recognize any such assignment.'" (*Id.* at 6-7 (citations omitted)). In support of its position, Plaintiff cites to a Third Circuit case that neither addresses ERISA claims nor applies federal law. *See generally Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435 (3d Cir. 1999) (applying New Jersey state law).

Plaintiff also argues that the anti-assignment provision is inapplicable to Plaintiff because Plaintiff is a provider of the very services that Patient's insurance policy is maintained to cover. (ECF No. 6 at 11). In defense of its argument, Plaintiff points to *Hermann Hospital v. MEBA Medical & Benefits Plan*, 959 F.2d 569 (5th Cir. 1992), *overruled on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012), a "Fifth Circuit decision [which] interpreted anti-assignment clauses, such as the one at issue here, to apply only to third-party assignees who may obtain assignments to cover unrelated debts." *Univ. Spine Ctr.*, 2018 WL 1757027, at *2 (citing *Hermann Hospital*, 959 F.2d at 575).

"The Court rejects both of Plaintiff's arguments because they are contrary to the recognized law in this district." *Id.* at *3. In a recent Third Circuit decision, the court held that it "now join[s] th[e] consensus and hold[s] that anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable." *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, No. 17-1663, 2018 WL 2224394, at *6 (3d Cir. May 16, 2018). In fact, "a majority of circuits, as well as courts in the Third Circuit, have given effect to anti-assignment provisions such as the one in this case and denied standing." *Univ. Spine Ctr.*, 2018 WL 1757027, at *3 (citing cases). Indeed, this District has rejected this Plaintiff's exact arguments against various insurance company defendants in other ERISA matters. *See id.*; *see also Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-7825, 2017 WL 6514663, at *2 (D.N.J. Dec. 20, 2017); *Univ.*

5

*Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.*, No. 17-193, 2017 WL 6372238, at *3 (D.N.J. Dec. 12, 2017); *Univ. Spine Ctr. v. Blue Shield of Cal.*, No. 17-8673, 2017 WL 5513688, at *3 (D.N.J. Nov. 16, 2017). Thus, in accordance with the decisions from this District, the Court finds that "a clear and unambiguous anti-assignment clause is enforceable against Plaintiff and will void any purported assignment of Patient's rights or benefits." *Univ. Spine Ctr.*, 2018 WL 1757027, at *3.

Notwithstanding the foregoing, Plaintiff avers that the provision in Patient's insurance policy allowing Defendant "to make payments directly to Providers and Suppliers" provides Plaintiff with standing to bring this action. (ECF No. 6 at 9-10). In other words, Plaintiff argues that such provision acts as a waiver of the anti-assignment provision because "[a]n assignment of the right to payment logically entails the right to sue for non-payment." (*Id.* at 10 (quoting *N. Jersey Brain*, 801 F.3d at 372)). The Court disagrees. In *Atlantic Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Insurance Company*, a court in this District, faced with a similar provision, found that "various courts have rejected the argument that payment to a provider directly amounts to waiver of an anti-assignment provision, where the plan at issue authorizes direct payment to providers." No. 17-4600, 2018 WL 1420496, at *6 (D.N.J. Mar. 22, 2018) (citing cases); *see also Am. Orthopedic & Sports Med.*, 2018 WL 2224394, at *6 (citing cases); *Ctr. for Orthopedics & Sports Med. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 16-8876, 2018 WL 1440325, at *4 (D.N.J. Mar. 22, 2018) ("'Courts have routinely enforced anti-assignment clauses despite provisions allowing direct payment to providers.' In fact, 'courts in this District have found that even remitting payment directly to a provider does not alone render anti-assignment provisions unenforceable if such action is authorized under the plan at issue.'" (citations omitted)). "Here, the Court cannot discern any reason to depart from . . . [the]

authorities holding that direct payment to a provider does not amount to waiver of an anti-assignment provision, where such payment is authorized under the plan at issue," *Atl. Plastic*, 2018 WL 1420496, at *6, and accordingly, finds Plaintiff's argument without merit.

Plaintiff also asserts that Patient's insurance policy "distinguishes between the 'assignability' of the right to receive payment as opposed to whether or not coverage can be 'transferred.'" (ECF No. 6 at 10). According to Plaintiff, Defendant's decision to use the word "transferred" rather than "assigned" with respect to the "benefits of th[e] Contract," (ECF No. 4-2 at 69), renders Patient's insurance policy devoid of any provision prohibiting the assignment of benefits. The Court again disagrees.

> According to *Black's Law Dictionary* (9th ed. 2009), "assignment" is a term of art meaning the "*transfer* of rights or property." The Third Circuit, providing a statement of New Jersey law, held that "[a]n assignment of a right is a manifestation of the assignor's intention to *transfer* it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires right to such performance."

*MHA, LLC v. Aetna Health, Inc.*, No. 12-2984, 2013 WL 705612, at *7 (D.N.J. Feb. 25, 2013) (emphasis added) (citations omitted), *abrogated on other grounds by N. Jersey Brain*, 801 F.3d 369; *Prof'l Orthopedic Assocs., Pa., Cohen v. Horizon Blue Cross Blue Shield of N.J.*, No. 14-4731, 2015 WL 5455820, at *3 (D.N.J. Sept. 16, 2015) (stating that, similarly to above, "[i]t is basic hornbook law that an 'assignment' accomplishes the '*transfer* of rights or property.' The 'assignment of a right is a manifestation of the assignor's intention to *transfer* it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires the right to such performance.'" (emphasis added) (citations omitted)). The anti-assignment provision states: "The right of a Member to receive payment is not assignable, except to the extent required by law, nor may benefits of this Contract be transferred either before or after Covered Services are rendered." (ECF No. 4-2 at 69). The anti-assignment

7

provision is clear and unambiguous. That Defendant chose to use the word "transferred" as opposed to repeating the word "assignable" does not mean that Patient could assign his benefits. Indeed, the word "transfer" is used to define the word "assignment," and in this context, the words effectively have the same meaning. *See MHA, LLC*, 2013 WL 705612, at *7; *Prof'l Orthopedic Assocs.*, 2015 WL 5455820, at *3. Accordingly, the Court finds Plaintiff's argument without merit.

Finally, the Court rejects Plaintiff's contention that "there is no reason that the right to receive benefit payments for services which have already been rendered, and which were due upon the submission of a bill, could not be assigned from one party to another." (ECF No. 6 at 10-11). As discussed previously, the Third Circuit recently held "that anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable." *Am. Orthopedic & Sports Med.*, 2018 WL 2224394, at *6. "[C]ourts within this District routinely enforce unambiguous anti-assignment provisions contained in ERISA-governed plans, and thus, find that providers lack derivative standing to seek benefits from the plan on behalf of their patients." *Atl. Plastic*, 2018 WL 1420496, at *5. Here, the reason Patient's benefits could not be assigned was because Patient's insurance policy contained a valid and enforceable anti-assignment provision. Accordingly, Plaintiff does not have standing to bring this action and Plaintiff's complaint must be dismissed.

## V. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is granted. To the extent the pleading deficiencies identified by the Court can be cured by way of amendment, Plaintiff is granted thirty (30) days to file an amended pleading. An appropriate Order accompanies this Opinion.

DATED: June 12, 2018

**CLAIRE C. CECCHI, U.S.D.J.**